**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**CLAYTON E. PACK,**

**Plaintiff,**

**v.** **Civil Action No. 5:14-cv-17286**
**Honorable Irene C. Berger**

**S&S FIRESTONE, INC. d/b/a**
**BEST ONE TIRE AND SERVICE**

**Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant S&S Firestone, Inc. d/b/a Best One Tire and Service ("Best One"), by counsel, submits this memorandum of law in support of its motion for summary judgment. As set forth below, summary judgment is appropriate because the claims set forth by the plaintiff, Clayton Pack ("Plaintiff"), fail as a matter of law.

## I. Introduction

Plaintiff filed his Complaint against Best One[1] on March 21, 2014, alleging two claims: (1) violation of the West Virginia Wage Payment and Collection Act, W.Va. Code § 21-5-4 ("Wage Act""); and (2) violation of the West Virginia Human Rights Act, W.Va. Code § 5-11-9 ("Human Rights Act"). Regarding the Wage Act claim, Plaintiff alleges that Best One failed to pay him all wages due and owing within 72 hours of the termination of his employment. As to the Human Rights Act claim, Plaintiff alleges that Best One discriminated against him by

[1] Initially, Plaintiff also named his former supervisor, Rich White ("White"), as a defendant and filed this case in the Circuit Court of Raleigh County, West Virginia. On May 30, 2014, however, Best One filed a Notice of Removal, arguing that Plaintiff fraudulently joined White as a defendant and, therefore, diversity jurisdiction exists in this case. (Docket No. 1). Plaintiff filed a Motion for Remand on June 11, 2014. (Docket No. 7). This Court entered a Memorandum Opinion and Order on August 27, 2014, denying the Motion for Remand, and dismissing all claims against White. (Docket No. 14).

terminating his employment because of his age. As set forth below, however, there is no genuine issue of material fact with regard to either claim and both claims fail as a matter of law.

## II. Facts

### A. Plaintiff's employment with Best One

In 1979, Plaintiff began working for Lucas Tire, located in Beckley, West Virginia. (Plaintiff's Deposition Transcript ("Pl. Dep."), p. 15; excerpts attached to Motion as Exhibit A). While working for Lucas Tire, Plaintiff worked: (1) as a tire tech, changing tires on tractor trailers or off the road equipment; (2) in the "Bandag Shop" (also known as the "Retread Shop") filling injured or cut tires with raw rubber; (3) changing tires on passenger vehicles; and (4) pressing and foam filling tires in the foam fill shop. (Pl. Dep. at 16–19). In approximately 2000, Best One bought Lucas Tire. (Pl. Dep. at 15).

When Best One purchased Lucas Tire, Best One retained Plaintiff as an employee. (Pl. Dep. at 20-21). Following the purchase, however, Best One shut down the Bandag or Retread Shop, one of the positions where Plaintiff had previously worked. (Pl. Dep. at 24). In addition, Best One moved the location from Neville Street in Beckley to a smaller space at Crab Orchard in Beckley. (Pl. Dep. at 15, 25). While Plaintiff testified that he still occasionally did an assortment of jobs for Best One, there came a time when he started working primarily in the mine shop. (Pl. Dep. at 25-26).[2]

After this time, Plaintiff worked on underground mining equipment tires, fixed flat tires, foam filled tires, and pressed tires. (Pl. Dep. at 26-29). From the time he started working primarily in the mine shop, through the end of his employment in 2012, Plaintiff was the only

[2] According to then Beckley Operations Manger, White, technically, there was no "mine shop" after the move to Crab Orchard, although they continued to do mine shop-type work. (White Dep., pp. 15-16; excerpts attached to Motion as Exhibit B). Plaintiff refers to this work as "mine shop" work throughout his deposition.

employee who foam filled and pressed mine tires. (Pl. Dep. at 28). In addition, Plaintiff helped with deliveries for tire salesman, Dan Cadle ("Cadle"), once or twice per week, or whenever Cadle could not make his own deliveries. (Pl. Dep. at 30-31). Approximately one year prior to the end of Plaintiff's employment, however, the mine business took a downturn. (Pl. Dep. at 28-30). Best One received less business and, as a result, Plaintiff filled and pressed less mine tires than usual. (Pl. Dep. at 28-30). Plaintiff admits that he was the only one filling mine tires at the time. (Pl. Dep. at 29). His delivery duties were also directly affected by the mining industry. (Pl. Dep. at 48). Plaintiff concedes that his work in general was dependent upon the mining industry. (Pl. Dep. at 48).

In April of 2012, Plaintiff needed to take time off for hernia surgery. (Pl. Dep. at 40-41). He told White the surgery was not an emergency and he could delay it to help train a temporary employee, John Cozart ("Cozart"), to work in the truck shop. (Pl. Dep. at 41, 43; White Dep. at 34). Cozart was filling in for Wayne Ballangee, who was off work due to an injured knee. (Pl. Dep. at 42; White Dep. at 33). Plaintiff admits that working in the truck shop was not his normal duty and, indeed, he did not work in the truck shop when he returned from surgery. (Pl. Dep. at 41-42). Instead, Plaintiff continued to deliver tires for Cadle, foam fill mine tires, and help out in the shop when needed. (Pl. Dep. at 41-43). Plaintiff concedes that there was less work for him to do for Best One as time progressed. (Pl. Dep. at 50).

Plaintiff had survived previous downsizing and layoffs at Best One. (Pl. Dep. at 47; White Dep. at 49). Unfortunately, however, the downturn in the mining industry resulted in lower sales and, thus, the need to lay off another individual. According to White, "it was all due to sales volume due to the coal industry." (White Dep. at 23). White selected Pack and the decision was authorized by Regional Manager, David Duncan ("Duncan") and Human Resources

Manager, Kevin Ash ("Ash"). (White Dep. at 22, 25-26; 44-45). According to White, it was a joint decision between him and Duncan. (White Dep. at 44-45). White selected Pack because he was the only one working in that particular position, which was heavily dependent on the mining industry. According to White, "It was due to – the mine industry had pretty much diminished. And we were doing away with that position." (White Dep. at 45; List of Best One employees at the Beckley location, attached to Motion as Exhibit C (showing that Plaintiff was the only one working in his particular job title/position)).

White did not select the younger employee, Cozart, because "Cozart was an inside tech/shop tech that stayed in the shop. And [Plaintiff] let me know on several occasions that he did not want to be in the shop all of the time." (White Dep. at 45). While Plaintiff could basically do any job at the Beckley location, he had also indicated to White in the past that he did not want to do night service calls. (Pl. Dep. at 33; White Dep. at 53-54). In addition, Plaintiff had indicated that he was not interested in doing any kind of service calls "full time." (Pl. Dep. at 32). Indeed, in 2011, about 18 months prior to his layoff, Pack's refusal to cover service calls is documented in an email from White to then-Regional Manager Scott Bailey ("Bailey"). (April 13, 2011 Email from White to Bailey re: Clayton Pack, attached to Motion as Exhibit D). In the email, White notes that Pack refused to cover service calls while another employee was out and states that "***whatever happens, happens***." (April 13, 2011 email; emphasis added).

According to Ash, he would have been concerned about an older employee being selected for layoff, but "I was told that [Plaintiff] had refused on multiple occasions to do night service work, to do service work in general and to do work there in the shop, that he basically wanted to do specific duties and that Rich had tailored his job to be those specific duties, then I was okay with it." (Ash Dep., p. 11; excerpts attached to Motion as Exhibit E). Consequently, on

December 3, 2012, Best One laid off Plaintiff. White completed an "Exit Interview / Separation Sheet" stating that the layoff was "due to cut backs and losing most of our mining bus. + salesmen delivering own tires." (Exit Interview/Separation Sheet, attached to Motion as Exhibit F).[3]

White was upset that he had to lay off Plaintiff. According to White, "I was actually upset myself when I let [Plaintiff] go that day. I considered a lot of my employees to be my friends too, not just employees. We all got along pretty well." (White Dep. at 71). White considered Plaintiff a good employee. (White Dep. at 77). If Plaintiff had ever indicated to White that he would have done the work which he had previously refused, that would have "changed things" for White as it pertained to the layoff decision. (White Dep. at 77). But, no one else was working in the same position as Plaintiff. (White Dep. at 77). That position was heavily dependent upon the mining industry. It was the downturn in the mining industry and resultant decrease in sales volume – not anything else – that led to Plaintiff's layoff. When a position later became available that Best One thought Plaintiff might be interested in, they offered it to him. (White Dep. at 77). According to Ash, the position "was more along the lines of what [Plaintiff] was doing . . . ." (Ash Dep. at 22). Plaintiff did not accept the offer. (Pl. Dep. at 57). Notably, Plaintiff was also laid off from the job he obtained after Best One because of a "slack in business," but he does not think that employer discriminated against him. (Pl. Dep. at 59, 61). In contrast, he believes that Best One's decision was based on his age. (Complaint).

**B. Plaintiff's Final Paycheck**

Following Plaintiff's layoff on December 3, 2012, Best One issued him a direct deposit pay stub dated December 14, 2012, indicating that Best One was paying him zero dollars for the

[3] As reflected in Exhibit F, there are two versions of the Separation Sheet, one which includes more detail. White testified during his deposition that he believes he started filling out the form, got called out on a sales call, then came back and completed the form. (White Dep. at 70-71.)

pay period December 2, 2012 through December 8, 2012 (the "Final Pay Period"). (December 14, 2012 Paystub, attached to Motion as Exhibit G). During the Final Pay Period, Plaintiff worked 8.05 hours, at a rate of $11.75 per hour. (December 14, 2012 Paystub; Pl. Dep. at 66-67). Based on the time worked by Plaintiff at his hourly rate, the total of wages owed to Plaintiff for the Final Pay Period was $94.59. (December 14, 2012 Paystub; Pl. Dep. at 67). As indicated on the pay stub, however, Best One deducted $14.85 for taxes; $71.82 for "PCA 3000 Employee plus 1[,]" Plaintiff's medical insurance plan; and $7.92 for "Vision 125-EE + Spouse," Plaintiff's vision insurance plan. (December 14, 2012 Paystub; Pl. Dep. at 68). Thus, the wages owed for the Final Pay Period, less the total legal deductions, made the total amount of wages payable to Plaintiff *zero*. Plaintiff does not dispute the validity of the deductions. (Pl. Dep. at 67).

## III. Discussion

### A. Summary judgment standard

In order to obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of

proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), abrogated on other grounds, 490 U.S. 228 (1989). In this case, summary judgment is appropriate, as set forth below.

**B. Plaintiff's Wage Act claim fails as a matter of law**

At the time of Plaintiff's layoff, the Wage Act stated, in relevant part,[4]

> Whenever a person, firm or corporation ***discharges*** an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours.

W. Va. Code § 21-5-4(b) (emphasis added). Importantly, however,

> When work of any employee is suspended as a result of a labor dispute, ***or when an employee for any reason whatsoever is laid off***, the person, firm or corporation shall pay in full to the employee not later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

W. Va. Code § 21-5-4(d) (emphasis added).

In the present case, Plaintiff alleges that Best One terminated his employment on December 3, 2012, and that Best One failed to pay him for monies due and owing him within 72 hours as required by the Wage Act at the time. Plaintiff concedes, however, that he was laid off

---

[4] The West Virginia Legislature revised W.Va. Code § 21-5-4(b) in 2013, and the statute now states, "[w]henever a person, firm or corporation discharges an employee, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday or four business days, whichever comes first."

and not discharged. (Pl. Dep. at 62). Thus, under W. Va. Code § 21-5-4(d), Best One was only required to pay Plaintiff by the next regularly scheduled payday. The fact that Best One did so is not in dispute.

Moreover, Best One did not owe Plaintiff any wages following the layoff. While Plaintiff had earned wages during the pay period, his legal deductions reduced his pay to zero. Under the Wage Act "deductions" is defined as "amounts required by law to be withheld, and amounts authorized for union or club dues, pension plans, payroll savings plans, credit unions, charities and hospitalization and medical insurance." W.Va. Code § 21-5-1(g). Again, Plaintiff does not dispute the legitimacy of the deductions taken. Therefore, his Wage Act claim fails as a matter of law.

**C. Plaintiff's age discrimination claim fails as a matter of law**

The Human Rights Act makes it an unlawful discriminatory practice, "for any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]" *Thomas v. Shoney's*, 845 F. Supp. 388, 390 (S.D. W.Va. 1994). "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate[.]" W.Va. Code § 5-11-3(h) (1998); *Colgan Air, Inc. v. W. Va. Human Rights Comm'n*, 656 S.E.2d 33, 40 (W.Va. 2007).

In order to make a *prima facie* case of employment discrimination under the Human Rights Act, a plaintiff must prove the following:

> (1) that the plaintiff is a member of a protected class;
>
> (2) that the employer made an adverse decision concerning the plaintiff; and

> (3) but for the plaintiff's protected status, the adverse decision would not have been made.

Syllabus Point 2, *Johnson v. Killmer*, 633 S.E.2d 265 (W.Va. 2006). According to the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals"):

> The first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. The evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

*Conaway v. Eastern Associated Coal Corp*., 358 S.E.2d 423, 429-430 (W.Va. 1986). In later decisions, the Supreme Court of Appeals clarified that this language requires plaintiffs to introduce enough actual evidence to demonstrate an inference of discrimination. Syllabus Point 2, *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152 (W.Va. 1995).

Under no circumstances, however, may a plaintiff rely simply upon his own speculative accusations to support his case. *See Hanlon v. Chambers*, 464 S.E. 2d 741, 748 n. 2 (W.Va. 1995); *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 337 (W.Va. 1995); *Johnson*, 633 S.E.2d at 266-268. Moreover, an employer's replacement of an older worker with a younger one is insufficient, by itself, to establish a *prima facie* case of age discrimination:[5]

> When an older employee is replaced, mere chance often dictates that, in a substantial number of instances, potential replacements

[5] There is no evidence in this case that Best One replaced Plaintiff with a younger worker. Plaintiff does contend that Best One hired a younger worker several months later; however, Best One hired that worker into a different position than the one in which Plaintiff had been working. (White Dep. at 51).

> will be younger. Further, an employer should not be subjected to suit simply and solely because it elects to hire a qualified young person when an older employee is terminated. As a result, this fact alone does not give rise to an inference of discrimination, nor does it establish a *prima facie* case.

*Ratliff v. Gymboree Operations, Inc.*, 2012 U.S. Dist. LEXIS 96000, *11 (S.D. W.Va. 2012) (citing *Smith v. Sears, Roebuck, and Co.*, 516 S.E.2d 275, 280-81 (W.Va. 1999) (plaintiff failed to show "any sort of nexus" between age discrimination and his termination, despite demonstrating, *inter alia*, that he was replaced by a younger employee)). Finally, when attempting to prove the *prima facie* case through comparators, the individuals used for comparison must have been similarly situated. *Mayflower Vehicle Systems, Inc. v. Cheeks*, 629 S.E.2d 762, 774 (W.Va. 2006).

An employer can rebut the *prima facie* case by showing a legitimate and non-discriminatory reason for the adverse employment decision. Syllabus Point 3, *Tom's Convenient Food Mart, Inc. v. West Virginia Human Rights Commission*, 527 S.E.2d 155 (W.Va. 1999). Then, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the legitimate reason articulated by the employer is merely a pretext for a discriminatory motive. *Id*. at Syllabus Point 4. The ultimate burden of proving discrimination always rests with the plaintiff. *Skaggs v. Elk Run Coal Company*, 479 S.E.2d 561, 582 (W.Va. 1996).

A plaintiff attempting to show pretext may not rest on the same evidence he used to prove an inference of discrimination. "The plaintiff's failure to come forth with evidence rebutting the defendant's explanation may entitle the defendant to judgment." *Barefoot*, 457 S.E.2d at 160. Therefore, the plaintiff must introduce additional evidence on the issue of pretext:

> When, as in this case, the employer produces a facially adequate explanation for the discharge, the presumption of discrimination created by the plaintiff's *prima facie* case disappears from view. . . . At that juncture, the burden reverts to the plaintiff, who must

> show that the 'reason given by the employer for the discharge is pretextual, and, moreover, that it is pretext for [sex] discrimination.'

*Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 16 (1st Cir. 2007) (internal citations omitted). A plaintiff must show *both* that the stated reason was false and that it was clearly or more likely than not simply being used as a pretext to cover up illegal discrimination. "A reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that the discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *see also Skaggs*, 479 S.E.2d at 584 ("if the pretext is a cover up for a legitimate motive, the defendant still wins").

In this case, Plaintiff alleges that he was laid off because of his age, as evidenced by the following: (1) Plaintiff was the oldest employee at the Beckley location; (2) Best One laid off Plaintiff instead of Cozart; and (3) Best One hired a younger employee, John Bolen ("Bolen"), approximately four or five months after it laid off Plaintiff. (Pl. Dep. at 69–70). Yet, based on his own admissions, Plaintiff cannot demonstrate that Cozart, Bolen, or anyone else is a valid comparator – because Plaintiff was the only one working in his particular position. (List of Best One employees at the Beckley location). Specifically, Plaintiff admits that his main duties at the time of his layoff were: (1) working in the mine shop; and (2) running deliveries for Cadle. (Pl. Dep. at 25–26, 30–31). In addition, he admits that nearly all of his work was dependent upon the mining industry and that when the mining industry declined, his work progressively declined as well. (Pl. Dep. at 48, 50). Likewise, it is undisputed that Plaintiff simply did not hold same position that Cozart and Bolen were hired to perform. (Pl. Dep. at 41-43; List of Best One employees at the Beckley location, showing that Best One hired Bolen as a tire tech, whereas Plaintiff worked as a "Foam Fill/Delivery Driver" at the time of his layoff).

Plaintiff will attempt to create an inference of discrimination through an email from White to Duncan six months prior to Plaintiff's layoff. In that email, White referred to an employee [Cozart] as having "youth on his side." (Email from White to Duncan dated May 15, 2012, attached to Motion as Exhibit H; White Dep. at 41). Ash testified during his deposition that, when that email came to his attention, he discussed it with White. According to Ash, the email did not concern him because White indicated that it "was a figure of speech, meaning that he liked the fact that he could spend time and train this guy and hopefully he would have a long career with us." (White Dep. at 8). Ash did not believe the comment meant White was making a decision based on age, testifying "[w]hen we go out looking for people to fill these positions, it's extremely difficult to find people that have any previous experience. So if you find somebody that has previous experience, it really doesn't matter what their age is if they have done this type of work, because this work is very difficult. It's hard on people." (Ash Dep. at 8-9).

Thus, even though White used the word "youth" in his email, it did not have any negative age-related connotation. The Fourth Circuit addressed a similar scenario in the case of *Birbeck v. Marvel Lighting Corporation, et al.*, 30 F.3d 507 (4th Cir. 1994). In that case, the plaintiffs alleged that one of the defendants, Fennessey, had stated "there comes a time when we have to make way for younger people." *Id.* at 509. According to the Fourth Circuit:

> [T]he statement in itself creates no inference of age bias. Fennessey's comment reflects no more than a fact of life and as such is merely a 'truism[]' that carries with it no disparaging undertones. . . . Moreover, statements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we/they situation – barring unfortunate events, everyone will enter the protected group at some point in their lives. Fennesey, at 52, was himself in the protected category. His remark should be seen for the non-actionable reflection on generational passage that it was.

*Id*. at 512 (internal citations omitted). *See also Vogel v. Travelers Insurance Company*, 1994 U.S. App. LEXIS 23944 (4th Cir. 1994) (supervisor comments about hiring "new blood" and hiring someone "younger" for less money were isolated comments of "questionable probative value" and did not establish a *prima facie* case of age discrimination); *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992) (references to "dead wood" and the need to "attract newer, younger people" are not necessarily probative of age discrimination and do not establish a prima facie case of age discrimination).

Likewise, in this case, White's comment similarly did not have any negative age-related connotation and adds no probative value to this case. In fact, his comment was more neutral-sounding than the comments made in the cases cited above. Even if the comment did otherwise have some value, it occurred seven months prior to Plaintiff's layoff. While isolated statements can sometimes constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (a particular remark can provide an inference of discrimination if it is made around the time of the adverse decision); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999) (an isolated comment can constitute direct evidence if made contemporaneous with the discharge or causally-related to the discharge decision-making process). Here, White's comment was not made contemporaneous with the layoff decision. Indeed, it occurred seven months earlier. Thus, it is insufficient by itself to create a *prima facie* case of age discrimination.

Even assuming *arguendo* Plaintiff could demonstrate an inference of discrimination and demonstrate a *prima facie* case of discrimination, which he cannot, Best One has articulated a legitimate nondiscriminatory reason for his discharge – his position was dependent on the mining

industry and, due to the decline in that industry, there was no longer enough work for him to do. Plaintiff himself concedes that most of the work he was doing for Best One was dependent upon the mining industry; and that, when the mining industry declined, Plaintiff's work progressively declined as well. (Pl. Dep. at 25–26, 30–31, 48, 50). Likewise, Plaintiff concedes that he was the only one doing that mine related work. (Pl. Dep. at 28). Thus, Best One has provided a legitimate nondiscriminatory reason for its actions, and Plaintiff's own concessions support the reasons given. Accordingly, Plaintiff cannot demonstrate pretext in this case and his age discrimination claim fails as a matter of law.

## IV. Conclusion

Based on the foregoing discussion, Plaintiff's claims fail as a matter of law. Therefore, Best One requests that this Court enter summary judgment in its favor.

**S & S FIRESTONE, INC. d/b/a**
**BEST ONE TIRE AND SERVICE**

By Counsel

/s/ Brian J. Moore

Brian J. Moore (WV State Bar #8898)
Jennifer J. Hicks (WV State Bar #11423)
Dinsmore & Shohl LLP
P. O. Box 11887
900 Lee Street, East, Suite 600
Charleston, WV 25339-1887
Telephone (304) 357-0900
Facsimile (304) 357-0919

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**CLAYTON E. PACK,**

**Plaintiff,**

**v.** **Civil Action No. 5:14-cv-17286**
**Honorable Irene C. Berger**

**S&S FIRESTONE, INC. d/b/a**
**BEST ONE TIRE AND SERVICE**

**Defendants.**

**CERTIFICATE OF SERVICE**

I, Brian J. Moore, do hereby certify that a true and exact copy of the foregoing ***Memorandum of Law in Support of Defendants' Motion for Summary Judgment*** was served on this the 16th day of March, 2015, upon counsel of record and the Clerk of the Court using the CM/ECF system:

Richard W. Walters, Esquire
Shaffer & Shaffer, PLLC
P.O. Box 3973
Charleston, WV 25339-3973
*Counsel for Plaintiff*

/s/ Brian J. Moore
Brian J. Moore (WV State Bar #8898)